# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

TONIE CURTIS COTTON,

        Plaintiff,

   -vs-                                          Case No.   11-CV-47

DON STRAHOTA, CAPTAIN RANDY CORE,
LT. R. SMITH, SGT. LIND,
BELINDA SCHRUBBE, CHARLENE REITZ,
GAIL WALTZ, and DR. GRISDEL,

        Defendants.

# DECISION AND ORDER

The pro se plaintiff, who is incarcerated at Waupun Correctional Institution, is proceeding on an Eighth Amendment failure to protect claim. The defendants have filed a motion for summary judgment, which will be addressed herein.

## I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## II. RELEVANT UNDISPUTED FACTS[1]

The plaintiff, Tonie Curtis Cotton, commenced this lawsuit asserting a cause of action pursuant to 42 U.S.C. § 1983 against Waupun Correctional Institution (WCI) employees. The plaintiff has been housed at WCI since March 17, 2010. He alleges that the defendants failed to act on his numerous requests to be moved from a cell he shared with inmate Alvester Gross. The two inmates did not get along and Gross acted strangely after he was moved into the cell with the plaintiff. The plaintiff claims that the fact that Gross has Hepatitis C and is serving both a prison sentence and a civil commitment as a sexually violent person pursuant to Chapter 980, Wisconsin Statutes, put the plaintiff at risk of assault by Gross and exposure to contracting Hepatitis C. The plaintiff and Gross became cellmates on September 12, 2010, and on September 17, 2010, they had a fight in their cell, resulting in physical injury and disciplinary action for both inmates.

---

[1] Facts are taken from the defendants' proposed findings of fact, the plaintiff's response to the defendants' proposed findings of fact, and the plaintiff's sworn complaint. *See Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996).

2

Defendant Sergeant Bonnie Lind is employed by the Wisconsin Department of Corrections (DOC) at WCI. Defendant Captain Thomas Core is employed at WCI. Core is responsible for the overall direction and operation of an assigned shift, and the supervision and treatment of inmates. Defendant Security Director Donald Strahota was employed at WCI at all times relevant. As Security Director, Strahota was responsible for all security activities including the development, implementation, and monitoring of institution goals, policies, and procedures as part of the institution management team. Defendant Belinda Schrubbe is employed as the Health Services Unit Manager at WCI. Her duties include management and supervision of health care services provided, developing procedures, monitoring care plans, preparing required reports, and providing liaison activities to other disciplines, institution units, and community health care providers. Because of her supervisory responsibilities, Schrubbe does not usually participate in or provide direct patient care. Defendant Charles Grisdale is employed as a psychologist at WCI. Defendants Charlene Reitz and Gail Waltz were employed at WCI as nurses at all times relevant.

**A. Events Leading Up to September 17, 2010, Altercation**

On September 12, 2010, the plaintiff and Gross were housed in the Northwest Cell Hall in separate cells. (Lind Aff. ¶ 5.) A plumbing issue arose with Gross's cell toilet which required Lind to move Gross and his then-cellmate out of the cell. (Lind Aff. ¶ 8.) Lind assigned Gross to be housed with the plaintiff. (*Id.*) When Lind made the decision, she made the judgment call that this was the best option available for Gross at that time and she had no reason to believe there was any risk of housing the plaintiff and Gross together in the same cell. (Lind Aff. ¶ 9.) There were no special needs or other security restrictions in place for the plaintiff or for Gross which would have precluded housing them in the same cell together. (*Id.*)

When Lind told the plaintiff she was moving Gross into his cell, the plaintiff told her that he and Gross did not get along, but Lind did not respond. (Cotton Dep. 10:20-25 – 11:1-2 .) Gross also told Lind that he and the plaintiff did not get along and Lind responded that he (Gross) did not make the decisions. (Gross Dep. 19:20-25 – 20:1-25.)

On September 12, 2010, the plaintiff submitted an interview request to Lind, asking to be moved. (Compl. ¶ 46; Cotton Dep. 14:9-25 – 15:1-11; Cotton Ex. 4.) He stated:

> I would like to be moved out of the cell with inmate Alvester Gross - #23699 because as I explained earlier we do not get along and he has threatened to kill me in the past. He has been acting very strange and hostile since he's been moved in with me and I fear for my safety. In addition, he has informed me that he has hepatitis and I fear he will try to purposely infect my hygiene supplies etc when I'm out of the cell! There are cells open in the cell block and I would like to be moved! Also, please come up to lock inmate Gross's lock on his locker!

(Cotton Ex. 4.) The plaintiff did not receive a response. (Cotton Dep. 15:12-14.)

On September 13, 2010, the plaintiff submitted an inmate complaint asking to be moved out of the cell with Gross because, "I had found out he had Hepatitis C and I didn't trust him to not try to purposefully infect any of my hygiene items etc. with his body fluids in an attempt to transmit the virus to me, because we did not get along." (Compl ¶ 4.) The inmate complaint was returned to the plaintiff, and he was told to contact Strahota to be moved. (Compl. ¶ 5.)

On September 13, 2010, the plaintiff submitted a Health Service Request (HSR) seeking to be moved out of his cell because Gross had Hepatitis C. Nurse Waltz responded by stating "there is no single cell for any Hep. C. We do not confirm or deny if patient has anything. Sent data [about Hepatitis C]." (Schrubbe Aff. ¶ 15; Cotton Ex. 5A.) On September 14, 2010, the plaintiff submitted an HSR wanting to be tested for Hepatitis C since he was being forced to be

4

housed with Gross. Nurse Reitz responded, "as long as you do not have sex or share razors or come in contact with anyone's blood you can't get Hep C by sharing a room." (Schrubbe Aff. ¶ 16, Rev. Ex. A at 53.) On September 15, 2010, the plaintiff submitted an HSR asking to be moved out his cell because Gross had Hepatitis C. Nurse Waltz responded by stating, "we have nothing to do with where you are housed. I sent data to you about Hep. C." (Schrubbe Aff. ¶ 17, Rev. Ex. A at 52.)

On September 13 or 14, 2010, the plaintiff submitted an Interview/Information Request form to Captain Core requesting to be moved out of the cell with Gross. (Compl. ¶ 8; Cotton Dep. 16:7-21; Cotton Ex. 3.) He stated:

> This request is in followup to my discussion with you and Sgt. Lind regarding my request to be moved out of the cell with him, Alvester Gross -#23699. He has been acting really strange - talking to himself and growling at night. Please move me out of the cell with him!

(Cotton Ex. 3.) Core did not respond to the request. (Cotton Dep. 16:22-24.) Gross also complained to Core that he did not want to be celled with the plaintiff. (Gross Dep. 32:4-23.)

On September 16, 2010, Strahota's office received a letter from the plaintiff requesting to be moved out of the cell he shared with Gross. The letter was dated September 14, 2010, and in it the plaintiff requested to be moved because Gross informed him that he had Hepatitis C and was contagious. The plaintiff also wrote that he had had a previous "incident" with Gross that caused them to not get along, and that he did not trust Gross and feared that Gross would infect his hygiene items with body fluids. (Strahota Aff. ¶ 5, Ex. A.) Consistent with Strahota's usual practice, he delegated this note to one of his security staff to investigate. (Strahota Aff. ¶ 6.) Strahota's office looked into the matter by contacting the Health Services Unit and was informed that there were no concerns with the plaintiff and Gross being housed together. (*Id.*)

5

On September 14, 16, and 17, the plaintiff spoke with Lind and Core, and explained the situation regarding the issues he was having with Gross. (Compl. ¶ 14.) Both defendants stated they were not going to move either inmate. (*Id.*) Core recalls the plaintiff speaking to him on September 17, 2010, regarding the fact that he did not want to share a cell with Gross. (Core Aff. ¶ 5.) Although Core does not recall the specific details of the conversation, he responded with his usual response to this type of complaint by an inmate which is to inform the inmate to give it about a month to see if each inmate could be adults and get along. (*Id.*) After that time, Core indicated that he would re-evaluate the situation. (*Id.*)

Between September 12 and September 15, 2010, the plaintiff sent numerous requests to the psychiatric department to be moved out of the cell with Gross due to Gross's alleged mental illness. (Compl. ¶ 12.) Although the plaintiff originally stated that he wrote to Dr. Grisdale, it is now known that the plaintiff corresponded with Dr. Garbelman, not Grisdale. (Grisdale Aff. ¶ 6.)

The decision to assign Gross to be housed in the plaintiff's cell was made by security staff and HSU had no involvement with the decision. DOC policy does not require single celling of a Hepatitis C inmate because, unlike an airborne infection, the risk of exposure in the cell to blood borne pathogens is generally low. Furthermore, there is a high incidence of Hepatitis C in inmate populations and it is not possible to single cell every inmate with this diagnosis. All clinical decisions to house an inmate in a single cell are done on a case by case basis based upon the clinical staff and security institution's assessment of the risk the individual inmate may pose to himself or others. The fact that an inmate is also civilly committed under Chapter 980 of the Wisconsin Statutes as a violent offender does not require that he be placed in a single cell. At no time between December 16, 2009, and the present has Gross been on a single cell restriction. (Strahota Supp.

Resp. at 2, Ex. A.)[2]

Between September 12, 2010 and September 17, 2010, Lind did not observe any behavior or receive any information that led her to believe that either inmate posed a threat to one another. If Lind had believed there was a security reason to separate Gross and the plaintiff, she would have done so. Also, Core had no reason to believe that there was any type of danger or risk from the plaintiff and Gross being housed in the same cell together. During the short time the plaintiff and Gross were cellmates, Core did not observe any behavior by either of them which led him to believe there was any serious risk in housing them together.

The plaintiff did not report to anybody at the DOC about being threatened by Gross in early 2010. The only confrontation between the plaintiff and Gross prior to their being celled together was a verbal argument over a bet on a basketball game. At his deposition, the plaintiff was asked if Gross made any direct threats to him and if Gross threatened him in any way prior to the fight that broke out on September 17, 2010. The plaintiff responded: "No, not really, not really. You know, just his entire, you know, attitude was just hostile." (Cotton Dep. 18:15-19.) The plaintiff also testified that, while there was a lot of tension in the cell between the two of them, the plaintiff did not threaten Gross in anyway prior to the fight. (Cotton Dep. 18:20-25.)

**B. September 17, 2010, Incident**

The altercation between the plaintiff and Gross occurred on September 17, 2010, after lunch time. (Cotton Dep. 29:4-7.) The inmates began verbally arguing. (Cotton Dep. 33:5-21.) The plaintiff kept telling Gross that he was going to have to do more to try to get out of being double-

---

[2] On February 6, 2012, defendants filed Defendants' Supplemental Response to Plaintiff's First Request for Production of Documents No. 18, Produced to the Court Under Seal. (Docket No. 59.) They request that the supplemental response be removed from seal and provided to the plaintiff. The court will so order.

celled together. (Gross Dep. 39:19-25.) Gross told the plaintiff that he was not going to keep asking about being moved out of the cell. (*Id.*) Gross had heard the plaintiff speak with Captain Core and decided, based on Core's response, not to raise the issue. (Gross Dep. 37:7-13.)

Both the plaintiff and Gross accuse the other person of throwing the first punch. (Cotton Dep. 36:1-2; Gross Dep. 41:4-9.) Gross claims he tried to defend himself by grabbing the plaintiff's arms and holding the plaintiff up against the wall. (Gross Dep. 41:14-22.) According to Gross, the plaintiff was hitting him and throwing punches so Gross started biting the plaintiff to defend himself. (Gross Dep. 47:12-25 – 48:1-7.) The plaintiff had Gross in a "head lock" and Gross bit the plaintiff to try to make him let go. (*Id.*) The plaintiff, on the other hand, claims that Gross pulled out a sock with a lock in it at the beginning of the altercation. (Cotton Dep. 33:5-25 – 34:1-13.) He also claims Gross wrapped the sock around his hand like he was getting ready to use it. (Cotton Dep. 35:2-5.) According to the plaintiff, he caught the lock in the sock after Gross swung it at him, and it hit him in the forehead before he got it away from Gross, but the lock did not make full contact with his forehead and did not harm him. (Cotton Dep. 35:1-14.) The plaintiff claims the lock fell to the floor and he and Gross began wrestling for the lock. (Cotton Dep. 35:9-11.) Gross denies this. (Gross Dep. 49:9-13.) According to the plaintiff, while they were on the floor, Gross began biting the plaintiff when the plaintiff was trying to reach for the lock. (Cotton Dep. 35:12-14.) The plaintiff states that he was bitten by Gross in the neck area, the upper part of his chest, his abdominal area and by his groin. (Cotton Dep. 38:2-6.)

Eventually, the plaintiff and Gross, who were locked in their cell, stopped fighting. The plaintiff was bleeding from the bites he received from Gross. (Cotton Dep. 42:2-8.) Gross suffered slashes to his face, near his nose, eyes and his jaw. (Cotton Dep. 41:8-16.) Gross's eyes

8

were bleeding and swollen, and he was taken to the hospital for medical attention. (Gross Dep. 47:15-18.)

The altercation between the plaintiff and Gross was discovered because Gross did not stand for count. The plaintiff has no complaints about the health care he received after he was injured in the fight with Gross. All post-fight blood testing has been negative and the plaintiff does not have any reason to believe he has Hepatitis C.

The parties dispute whether Lind was aware that Gross's padlock - the lock the plaintiff claims Gross put in a sock and swung at him - was not secured to Gross's locker. According to the plaintiff, Lind knew that Gross's lock was not secured to his locker because both the plaintiff and Gross informed her of that, in writing and orally, numerous times. (Gross Dep. 52:11-18; Compl. ¶ 42.) The defendants, on the other hand, aver that Lind was unaware that Gross's padlock was not secured on September 12, 2010. According to the defendants, if the padlock was not secured when Gross moved into the plaintiff's cell, one of them should have alerted Lind, but they did not. (Lind Aff. ¶ 14.)

### III. ANALYSIS

The defendants contend that neither Core nor Lind were deliberately indifferent to the plaintiff's safety. They also contend that the plaintiff's claims against WCI health care staff should be dismissed because, (1) DOC policy did not prohibit placing Gross in a cell with another inmate; (2) Schrubbe and Grisdale had no personal involvement in the events about which the plaintiff complains; and (3) Nurses Waltz and Reitz appropriately responded to the plaintiff's questions and concerns. The defendants further contend that the plaintiff's claim against Strahota

is based upon a theory of respondeat superior liability.[3]

Prison officials owe inmates a duty to protect them from violent assaults inflicted by other inmates. *Farmer v. Brennan,* 511 U.S. 825, 833 (1994); *Guzman v. Sheahan,* 495 F.3d 852, 856-57 (7th Cir. 2007). An official violates that duty, grounded in the Eighth Amendment's prohibition on cruel and unusual punishment, if he is deliberately indifferent to conditions that pose a substantial risk of serious harm to an inmate. *Farmer,* 511 U.S. at 847; *Klebanowski v. Sheahan,* 540 F.3d 633, 637 (7th Cir. 2008); *Pinkston v. Madry,* 440 F.3d 879, 889 (7th Cir. 2006). In order to prove deliberate indifference, though, an inmate must show more than mere negligence; prison officials must have been "aware of a substantial risk of serious injury to [the inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman,* 495 F.3d at 857 (quoting *Butera v. Cottey,* 285 F.3d 601, 605 (7th Cir. 2002)). Moreover, "[e]ven if an official is found to have been aware that [the inmate] was at substantial risk of serious injury, he is free from liability if he responded to the situation in a reasonable manner." *Fisher v. Lovejoy,* 414 F.3d 659, 664 (7th Cir. 2005); *see Farmer,* 511 U.S. at 847.

**A. Defendants Core and Lind**

The defendants contend that Lind and Core were not deliberately indifferent to the plaintiff's safety. First, they contend that the plaintiff cannot satisfy the objective prong of an Eighth Amendment claim, that he was incarcerated under conditions posing a substantial risk of serious harm, because "there is no evidence that any specific, credible threat was made known to either Lind or Core which would have warranted separating the two inmates." (Defs.' Br. at 12.) The

---

[3] Although defendant Lieutenant Smith remains a defendant in this case, he is only implicated in the plaintiff's access to the court allegations, Compl. ¶ 47, but the plaintiff was not allowed to proceed on an access to the courts claim, Court's Screening Order of March 31, 2011, at 7. Thus, Smith will be dismissed.

defendants further contend that the record shows that Lind and Core did not ignore the plaintiff's complaints but rather "evaluated them in light of their own observations and made their own judgment that the risk did not warrant separating them." *Id.*

The defendants cite to *Riccardo v. Rausch*, 375 F.3d 521 (7th Cir. 2004), in support of their contention that the plaintiff's complaints did not constitute an objective risk to his safety. In that case, a prisoner, Riccardo, complained that he feared for his life after a guard, Rausch, placed an inmate in his cell with him. *Id.* at 525. Rausch responded that there was no other place to put the inmate that night. *Id.* The guard then asked each inmate if he had a problem with the other and Riccardo nodded his head indicating he did not. *Id.* Rausch took that as agreement to the assignment and that was his last contact with Riccardo. *Id.* Two days later, the inmate who was placed in the cell with Riccardo sexually assaulted him. A jury concluded that Rausch had subjected Riccardo to cruel and unusual punishment and awarded $1.5 million in compensatory damages. *Id.* at 523. However, the Court of Appeals for the Seventh Circuit reversed and held that evidence was insufficient to show Rausch knew or deliberately disregarded the fact that his actions subjected Riccardo to a substantial risk of serious harm. *Id*. at 528.

The court of appeals reasoned that the objective prong of the Eighth Amendment claim was not satisfied because the risk that Riccardo sought protection from, specifically that he believed the Latin Kings had a "hit" out on him and that he feared for his life if celled with the inmate, did not come to pass because the inmate did not act for the Latin Kings but rather told Riccardo he was fulfilling a personal desire. *Id.* at 525, 526. Thus, the risk from which Riccardo sought protection was not realized, and the risk to Riccardo of sharing a cell with the inmate "was no greater than the risk of sharing a cell with any other prisoner." *Id.* at 526-27. The court also

11

determined that no reasonable jury could have found that Rausch subjectively appreciated that his action would expose Riccardo to a substantial risk of serious harm. *Id.* at 527. Although Riccardo had initially asserted mortal fear, when later asked if he had a problem with the inmate, Riccardo indicated he did not. *Id.*

In this case, the defendants contend that the risk to which the plaintiff was exposed is that risk which the court in *Riccardo* characterized as "systemic circumstances" over which individual staff members in those institutions have no control. The court of appeals stated:

> Rausch did not assault Riccardo and is not vicariously liable for Garcia's crime. Like other guards, however, Rausch was required to refrain from placing Riccardo in harm's way gratuitously. The qualification "gratuitously" is important, because prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more. Guards cannot turn away persons committed by the courts; nor do individual guards have any control over crowding and other systematic circumstances. All that can be expected is that guards act responsibly under the circumstances that confront them. *See McGill v. Duckworth*, 944 F.2d 344 (7th Cir. 1991). A guard may be responsible without being credulous. Some prisoners are manipulative and cry "wolf" in an effort to have a cell to themselves or choose a favored cellmate. Other prisoners perceive specters in every shadow, even though their fears are unsupported. (There is, for example, no reason to think that the Latin Kings ever had it in for Riccardo. He did not belong to a rival gang, and there is not history of violent or overtly hostile encounters between Riccardo and any gang member.) Guards therefore must discriminate between serious risks of harm and feigned or imagined ones, which is not an easy task given the brief time and scant information available to make each of the many decisions that fill every day's work.

*Id.* at 525.

Here, it is undisputed that the plaintiff and Gross objected to Lind's decision to put them together in one cell. Even before Gross was moved in, both inmates told Lind they did not

12

want the other as a cellmate because they did not get along. Lind did not respond. Beyond these initial objections, Lind did not have any security reason to not move Gross into the cell with the plaintiff on September 12, 2010. Gross's Hepatitis C diagnosis and sex offender status did not, in and of themselves, prevent Lind from housing Gross with other inmates. Also, it undisputed that Gross did not have a single cell restriction on September 12, 2010.

Once Gross moved in, the plaintiff kept complaining about the situation. He submitted an interview request form to Lind on September 12, 2010, stating in part, "as I explained earlier we do not get along and he has threatened to kill me in the past" and "[h]e has been acting very strange and hostile since he's been moved in with me and I fear for my safety." In addition, on September 13 or 14, 2010, the plaintiff submitted an interview request form to Core, as a follow-up to a previous discussion with Lind and Core, requesting to be moved out of the cell with Gross who he states had been "acting really strange – talking to himself and growling at night." Core did not respond to this request. The plaintiff avers that he spoke with Lind and Core on September 14, 16, and 17, 2010, regarding the issues he was having with Gross, and that both defendants said they would not move either prisoner. Core recalls a conversation with the plaintiff on September 17, 2010, regarding objections to being celled with Gross and, although he does not recall specific details, states that he responded with his usual response to inmates in that situation which was to inform the inmate to give it month to see if they could be adults and get along.

Although the plaintiff communicated his objection to being celled with Gross repeatedly and referenced a past threat, the record does not support a finding that either Core or Lind was aware that the plaintiff was at risk of a specific, present threat from Gross. Indeed, the plaintiff testified that between September 12 and September 17, 2010, Gross did not threaten him and he did

13

not threaten Gross. Aside from the plaintiff's September 12, 2010, interview request to Lind in which he stated that Gross had "threatened to kill me in the past," most of the plaintiff's complaints related to his fear that Gross would infect his hygiene items with Hepatitis C, which never happened. Moreover, the parties' dispute over whether Lind was aware that Gross's lock was not attached to his locker is not material because the plaintiff did not complain that Gross threatened to harm him with the lock. Accordingly, the plaintiff cannot satisfy the objective prong of an Eighth Amendment failure to protect claim. *See Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (finding statements that other inmates were "pressuring" plaintiff and "asking questions" were too vague and inadequate to put pressure on prison officials on notice that inmate faced substantial risk of attack); *Klebanowski*, 540 F.3d at 639 (finding inmate's statements that he feared for his life and wanted to be transferred were insufficient to show officers were aware of specific threat); *Grieveson*, 538 F.3d 763, 776 (7th Cir. 2008) (holding inmate's statement that he was afraid and wanted to be moved did not show awareness of specific risks); *Butera*, 285 F.3d at 606 (plaintiff inmate who told correctional officers he was "having problems in the block" and "need[ed] to be removed" insufficient to alert law enforcement officials to a specific threat).

Even if Core and Lind had known of a serious threat, a reasonable jury could not conclude that either defendant acted with deliberate indifference. They were in contact with the plaintiff, and presumably Gross, on a daily basis. Neither defendant observed behavior which led them to believe that the plaintiff and Gross posed a threat to one another and, if they had, they would have separated the inmates. Under the circumstances, Lind and Core cannot be said to have acted unreasonably in not separating the plaintiff and Gross. *See Riccardo*, 375 F.3d at 525; *see also Borello v. Allison*, 446 F.3d 742, 747-48 (7th Cir. 2006).

While in retrospect, the better decision may have been to separate the two, proving that an officer was deliberately indifferent to the safety of an inmate requires "more than a showing of negligent or even grossly negligent behavior." *Guzman*, 495 F.3d at 857 (quoting *Fisher*, 414 F.3d at 662). The officer must have acted with "the equivalent of criminal recklessness." *Guzman*, 495 F.3d at 857. Prison officials who had actual awareness of a substantial risk to the health or safety of an inmate do not incur liability if they "responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent." *Id.* (quoting *Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002)). The "mere failure of the prison official to choose the best course of action does not amount to a constitutional violation." *Id.*

**B. Security Director Strahota and Health Care Staff**

Dismissal of the plaintiff's failure to protect claim on the merits as to Core and Lind dooms the plaintiff's claim against the remaining defendants. However, even if the claim survived as to Core and Lind, Strahota and Schrubbe would be subject to dismissal because there is no supervisory liability under § 1983. *See Arnett v. Webster*, 658 F.3d 742, 757-58 (7th Cir. 2011); *see also Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). With regard to Reitz and Waltz, the nurses responded to the plaintiff's health requests and provided him with information about Hepatitis C, but did not have authority to move either inmate to another cell. Finally, although the plaintiff originally thought he had communicated with Dr. Grisdel about his situation, it is now known that he did not, and therefore Dr. Grisdel was not personally involved in this action. *See id.*

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (Docket No. 40) is **granted**.

15

**IT IS FURTHER ORDERED** that the plaintiff's motion for order dismissing summary judgment (Docket No. 51) is **denied**.

**IT IS FURTHER ORDERED** that Docket Number 59 be removed from seal and provided to the plaintiff.

**IT IS FURTHER ORDERED** that this case is **dismissed**.

Dated at Milwaukee, Wisconsin, this 11th day of May, 2012.

                                              **SO ORDERED,**

*[Signature: Rudolph T. Randa]*

                                           **HON. RUDOLPH T. RANDA**
                                           **U. S. District Judge**